76. Joseph Callahan is a selectman for the Town of Boxford and resides at 27 Bare Hill Road, Boxford, Massachusetts.

77. The plaintiffs incorporate by reference previous paragraphs numbered 1, 10, 37 and 45.

78. This court has jurisdiction to hear this matter pursuant to c. 240, §14A and c. 231A, §1.

79. In June, 2003, the plaintiffs submitted a plan to the Boxford Zoning Board of Appeals seeking a variance from the irregular lot shape zoning by-law, §196-24K. A copy of said zoning by-law is attached hereto as Exhibit E and incorporated by reference.

80. Before the Boxford Zoning Board of Appeals acted on the application, the plaintiffs withdrew without prejudice because the Boxford Zoning Board of Appeals suggested, and the plaintiffs also concluded, that the Zoning Board of Appeals lacked authority to grant the variance.

81. The interest of the Town, neighbors and plaintiffs would be better served by a subdivision which called a shorter road, for example, as depicted in the plan referred to above in paragraph numbered 79. The irregular lot shape zoning by-law, §196-24K, prohibits the plaintiffs from obtaining a subdivision approval of such a shaped lot as depicted on said plan.

82. The application of the irregular lot shape zoning by-law, §196-24K(1)(a), as applied to the plaintiffs' land in Boxford and their desire to subdivide, is invalid in that the by-law is arbitrary, unreasonable and does not serve legitimate

government purposes both as to how it is written and how it is applied particularly as compared to §196-24K (1)(b). Furthermore, there is no provision for any flexibility in its application, as in this case where the plaintiffs' proposed lot is only 3% less than the arbitrary standard that has been set by §196-24K(1)(a), but would exceed the standard for a 6 acre lot under §196-24K(1)(b) by 27%.

83. There is no logical connection or reasonable basis to apply this 50% criteria as a valid exercise of the town's police power. 47% compliance provides no less of a protection to the health, safety, morality or general welfare of the community than 50% would be. The imposition of this zoning regulation in this instance has no real or substantial relation to the public safety, public health or public welfare. The initial adoption of the 50% number was arbitrary.

84. This zoning by-law, §196-24K(1)(a), has not been uniformly applied.

85. Zoning by-law §196-24K(1)(b) creates spot zoning for 6 acre parcels, but does not grant 2-3 acre parcels (such as the plaintiffs propose) the same treatment.

86. Zoning by-law §196-24K(1)(a) is exclusionary.

87. §196-24K(1)(a) is in conflict with the state zoning enabling act, M.G.L. c. 40A and conflicts with the plaintiffs' rights not to have private property taken for a public purpose without compensation, as protected by the Massachusetts Declaration of Rights, Art, I and X and by the 5th and 14th Amendments to the United States Constitution.

88. The imposition of this zoning by-law in this instance against the land of the plaintiffs has no real or substantial relationship to the public safety, public

health or public welfare, but would amount to an arbitrary, unreasonable and oppressive deprivation of the plaintiffs' property rights. In cases involving similar principles, the Massachusetts state courts have declared such zoning by-laws invalid. See Aronson v. Town of Sharon, 346 Mass. 598 (1964).

WHEREFORE, the plaintiffs request that this Court issue a binding determination:

(a) that Boxford's zoning by-law, §196-24K be declared invalid generally;

(b) that Boxford's zoning by-law, §196-24K be declared invalid; as it applies to the plaintiffs and their land in Boxford;

(c) that the Boxford Planning Board be directed to disregard this zoning ordinance relative to any future definitive plan application to be proposed for the plaintiffs' land on Spofford Road, or for any amendment or modification of the current plans on file with the Planning Board that are the subject matter of this suit and likely to be remanded; and

(d) that this Court make such other equitable orders as are just.

**COUNT EIGHT - Declaratory Judgment - Trails - §300-21**

89. The plaintiffs incorporate by reference allegations 1-9, 15-21, 27-45, 53, and 54.

90. Pursuant to M.G.L. c. 231A, §1, the plaintiffs seek declaratory judgment and equitable relief in regard to Boxford Planning Board Regulation §300-21.

91. §300-21 of the Boxford Subdivision Rules and Regulations is a rule that purportedly allows the Planning Board, in their discretion, to require that part of any new subdivision be dedicated for use as public bikeways, walk paths and

- 23 -

(horse) trails, without compensation to the owner of the property. There are no written guidelines for the exercise of this discretion. A copy of Regulation §300-21 is attached hereto, marked as Exhibit H and incorporated by reference.

92. §300-21 of the Boxford Subdivision Rules and Regulations conflicts with the requirement that private land shall not be taken for public purpose without compensation, as set forth in M.G.L. c. 41, §81Q, Massachusetts Declaration of Rights, Art, I and X and with the 5th and 14th Amendments to the United States Constitution.

93. As part of the process of seeking subdivision approval, the plaintiffs were asked to provide to the planning board information on trails on plaintiffs' property and show all trails on the proposed subdivision plan. There are no public trails on the plaintiffs' property.

94. Boxford subdivision regulation §300-21 has been used in the past by the planning board members as a tool to require the establishment of public trails on private property without compensation. The Boxford Planning Board has in the past required that such public trails be deeded in advance as a condition precedent to obtaining subdivision approval.

95. BTA/BOLT, Inc. is a nonprofit corporation that was created for the purpose of protecting open space and wildlife habitat and preserving land in its natural state in Boxford. That organization openly advertises that it works with "the Boxford Planning Board to establish trail easements". On their web site, they acknowledge that they are looking to "protect it [land] from development".

- 24 -

96. Part of the process of expanding the BTA/BOLT trail system is to get private land into the public trail system. The Boxford Planning Board facilitates this process in part through application of subdivision regulation §300-21.

97. Several, if not all, of the members of the Boxford Planning Board are also members of the Boxford Trails Association (BTA/BOLT). Defendant Robert Gore is the Planning Board chairman. His wife is the president of BTA/BOLT and often appears before the planning board. Based upon documents seen by the plaintiffs, defendant Robert Ford is believed to have received compensation from or through BTA/BOLT within the last 12 months, contrary to the requirements of M.G.L. c. 268A, the state conflict of interest statute.

98. These interrelationships seem to suggest a conflict of interest exists with those members of the Boxford Planning Board who are also either members of BTA/BOLT or are receiving direct or indirect compensation from BTA/BOLT. There appears to be an inherent conflict between the goals of BTA/BOLT and the public responsibilities of the Planning Board members, as established by the state subdivision control law.

99. Under the circumstances of this case, it would be unfair and unreasonable to enforce the provisions of §300-21 against the plaintiffs. Furthermore, it would appear that the defendants may have a conflict of interest in regard to this issue so that they would be barred by state conflict of interest regulations from voting on such matters.

WHEREFORE, the plaintiffs demand that this court enter an order:

(a) declaring §300-15 of the Boxford Subdivision Rules and Regulations to be invalid generally and as it applies to the plaintiffs and their land in Boxford on the grounds that it conflicts with the requirement that private land shall not be taken for public purpose without compensation, as set forth in M.G.L. c. 41, §81Q, Massachusetts Declaration of Rights, Art, I and X and with the 5th and 14th Amendments to the United States Constitution; and

(b) that this Court make such other equitable orders as are just.

**COUNT NINE - Declaratory Judgment - Scenic Roads Act**

100.. The plaintiffs incorporate by reference allegations 1 through 9.

101. In October, 2003, the plaintiffs filed with the Boxford Planning Board an application to cut 4 trees and move stones in relation to their application for definitive plan approval. Pursuant to c. 87, public notices were given and a public hearing was held before the Boxford Planning Board on November 19, 2003.

102. At that time, the Planning Board tabled the matter for consideration at a later date. The plaintiffs agreed to the delay providing that a vote would be taken within the time allowed for the Planning Board to vote on the definitive plan.

103. The time to vote on the definitive plan expired without the Planning Board voting on the Scenic Roads Application.

104. The Boxford Planning Board has no reasonable basis to deny the Scenic Roads Application.

WHEREFORE, the plaintiffs request that this Court issue a binding determination that the scenic roads application has been approved due to the failure of the Board

to take action within a reasonable time and that in any case the Board has no reasonable basis to deny the scenic roads application.

For the plaintiffs,

Gary S. Sackrider, Esq.
100 Cummings Center
Suite 207P
Beverly, Massachusetts 01915
Tel: (978) 745-8850
B.B.O. #437360

    I hereby certify that a true copy of the above document was served by mail on the attorney of record for each other party in this action on March 19, 2004.

Gary S. Sackrider, Esq.

EXHIBIT A

# Gary S. Sackrider
### Attorney at Law
100 Cummings Center
Suite 207P
Beverly, Massachusetts 01915

———

Tel: (978) 745-8850

January 28, 2004

Pat Shields, Town Clerk
Town of Boxford
Town Hall
7A Spofford Road
Boxford, Massachusetts

RE:   NOTICE OF APPEAL

Dear Pat:

This letter is being submitted on behalf of myself and my wife, Mary Sackrider pursuant to M.G.L. c. 41, sec. 81BB. Your records should reflect that we both live at and own the property located at 154 Spofford Road in Boxford. On behalf of both Mary and I, I am hereby notifying you, pursuant to statute, of our appeal from two decisions of the Boxford Planning Board. The first decision appealed from is four conditions imposed as part of the constructive grant of our subdivision on or about January 16, 2004. The second decision appealed from is the January 21, 2004 revocation by the Boxford Planning Board of the constructive grant of subdivision. I believe the January 21, 2004 decision was filed with you on January 24, 2004.

A copy of our Land Court complaint is provided herewith, as required by law.

Yours truly,

*Gary S. Sackrider*

Gary S. Sackrider

HAND DELIVERED ON JANUARY 29, 2004

EXHIBIT B



# TOWN OF BOXFORD
## PLANNING BOARD

ıuary 21, 2004

tricia Shields, Town Clerk
ıxford Town Hall
ıxford, Massachusetts 01921

    Re: <u>Motion to Rescind Constructive Approval of Definitive Subdivision Plan dated August 15,</u>
<u>2003 at 154 Spofford Road pursuant to Mass. Gen. L. ch. 41, § 81 W; Applicant Gary</u>
<u>Sackrider</u>

ar Ms. Shields:

e Planning Board, at its January 21, 2004 meeting, voted unanimously to rescind any constructive
proval of the above-referenced Definitive Subdivision Plan pursuant to Mass. Gen. L. ch. 41, § 81 W
cause the plan does not comply with the Planning Board Rules and Regulations and the
:ommendations of the Board of Health (see Planning Board decision attached hereto).

; a result, the plan does not have the status of an approved plan and no certificate to that effect should
issued.

    Respectfully submitted,

    Robert C. Gore, Chairman

    Gary Sackrider (certified and regular mail)
    Building Inspector
    Conservation Commission
    Board of Health



# TOWN OF BOXFORD
## PLANNING BOARD

January 21, 2004

Patricia Shields, Town Clerk
Boxford Town Hall
Boxford, Massachusetts 01921

      Re: <u>Definitive Subdivision Plan dated August 15, 2003 at 154 Spofford Road;</u>
      <u>Applicant Gary Sackrider</u>

Dear Ms. Shields:

The Planning Board, at its January 21, 2004 meeting, voted unanimously to deny the above-referenced Definitive Subdivision Plan as the Plan does not comply with the Planning Board Rules and Regulations for the following reasons:

1. Insufficient evidence submitted relating to wetland resource areas at the site and impacts of alteration of wetlands onsite and offsite caused by the development;
2. Failure to delineate all wetland resource areas as required by the regulations;
3. Insufficient evidence submitted showing mitigation of flooding, alteration of onsite vernal pool, and flooding of adjacent properties;
4. Insufficient evidence submitted regarding mitigation of existing drainage problems;
5. Insufficient evidence submitted regarding mitigation of elevated groundwater flow as a result of construction impacts;
6. Insufficient evidence submitted regarding potential tree damage and trespass as to properties adjacent to proposed roadway;
7. Failure to file a septic system design;
8. Failure to file Definitive Subdivision Plans with Board of Health;
9. Failure to obtain recommendation from Board of Health;
10. Failure to provide soils analysis and percolation test data for the roof recharge area as well as an analysis of the effectiveness of the infiltration and storm water recharge;
11. Failure to file notice with Natural Heritage and Endangered Species Program relative to priority habitat as required by the Subdivision Rules and Regulations;



# TOWN OF BOXFORD
## PLANNING BOARD

12. Failure to propose mitigation measures regarding alteration of endangered species habitat and vernal pool at the project site;

13. Failure to comply with Boxford Zoning Bylaw as the 200-foot circle for the existing residence impermissibly encroaches within the 50-foot front setback pursuant to Section 196-24.D(2);

14. Failure to file a Notice of Intent with the Conservation Commission or ANRAD data (test bores supervised by Cons Comm.) to verify accuracy of wetlands boundaries as required by the Subdivision Regulations;

15. Failure to locate property owner Reid's well at 157 Spofford Road, on the Subdivision Plan;

16. Failure to locate the path of buried utilities in accordance with regulations pertaining to new subdivisions;

17. Failure to indicate the location of the required sub-terrain fire/water reserve tank as required for new subdivisions;

18. The existing well for new Lot 1 will be non-conforming and is within 50 feet of the proposed public road;

19. Failure to comply with zoning in that the well for Lot 2 appears to be within 80 of a wetland resource area and the 200 ft circle encroaches within the 50 foot setback for a wetlands;

20. The original Environmental Impact Statement is outdated, having been invalidated by the new discovery from the test borings supervised by Fred Geisel, PE and subsequent major re-design of road elevations and water run-off flows, as a result, the impact statement fails to provide sufficient information to make conclusions about the effect on the environment such as drainage, flooding and groundwater levels;

21. Insufficient evidence submitted regarding compliance with roadway design standards;

22. Failure to provide sufficient information regarding potential damage to vernal pool and adjacent residential wells regarding detention basin on Lot 1;

23. Failure to show all natural features as required by the regulations;

24. Failure to provide location of adequate fire tanks on plan;

25. Failure to show existing easements on the plan;

26. Failure to provide adequate drainage system regarding Basin C;

27. Failure to address high ground water mitigation as it effects Basins A and B;

28. Failure to obtain recommendations from Police, Fire and DPW;



# TOWN OF BOXFORD

## PLANNING BOARD

29. Failure to provide written responses to comments regarding plan noncompliance submitted by town's engineer VHB and consultant Fred Geisel, PE; and

30. Failure to submit payment in escrow for town's engineering and hydrological consultant pursuant to the regulations which constitutes grounds for denial.

Respectfully submitted,

_Robert C. Gore_

Robert C. Gore, Chairman

:c:    Gary Sackrider (certified and regular mail)
Building Inspector
Conservation Commission
Board of Health
Department of Public Works

EXHIBIT C

§ 300-10                           SUBDIVISION OF LAND                    § 300-11

(b) In addition, for all subdivisions over 25 lots, or where otherwise deemed necessary by the Board, the applicant shall furnish a traffic analysis of the impact of the additional traffic to be generated by the proposed development on the adjacent ways and intersections. The study shall be compiled in accordance with the criteria of the American Association of State Highway and Transportation Officials.

(21) The applicant shall simultaneously apply for a request for determination from the Conservation Commission for any wetland impacts resulting from the subdivision and present this information as part of the preliminary plan process.

(22) To facilitate review of the preliminary plan by the appropriate authorities at the time of filing of the preliminary plan, the applicant shall stake the center line and approximate limits of grading on both sides of all proposed streets on fifty-foot center line stations. Cut or fill dimensions to road profile grade shall be marked on the stakes.

C.  Approval of a preliminary plan. The Board may, at the Board's option, hold an informal hearing of which abuttors are given notice in order to solicit comment during the preliminary plan stage. The Board may give such preliminary plan approval, with or without modification or suggestion, after the Board's review, and at the Board's option, review with the Board of Health, the Conservation Commission, the Superintendent of Public Works, the Police Department, Fire Department and other Town agencies. Such approval does not constitute approval of the subdivision, but facilitates the preparation of the definitive plan and securing approval thereof. Approval shall be effective for seven months or until a definitive plan evolving from the preliminary plan is filed, whichever comes first.

D.  Disapproval of a preliminary plan. In the event of disapproval of a preliminary plan, the Board shall state the reasons for its disapproval in accordance with MGL c. 41, § 81-U.

§ 300-11. Definitive plan.

A.  Submission of a definitive plan. Any person who submits a definitive plan of a subdivision to the Board for approval shall file with the Board all items required in Subsections A and B of this section and the applicable filing fee (see § 300-7) for a definitive plan to be duly submitted in accordance with these rules and regulations and the General Laws of Massachusetts. Such submission shall be made to the Board at a designated regularly scheduled meeting of the Board.

(1) Twelve contact prints of the definitive plan, dark line on white background, each folded to a maximum of 8½ inches by 11 inches with the title side out, shall be filed with the Board.

(2) Three copies of a properly executed Form C (Application for Approval of a Definitive Plan), Form D-1 (Engineer's Certificate) or Form D (Land Surveyor's Certificate), and Form E (Certified List of Abuttors).[10] The applicant shall be responsible for obtaining

_____
[10] Editor's Note: Forms C, D-1, D and E are included at the end of these regulations.

a certified list of abutters from the Town Assessor's office and for notification of all certified abutters regarding the proposed definitive plan. **Proof of notification shall be provided to the Board on or before the date of public hearing.**

(3) The applicant shall also file by delivery or registered mail a notice with the Town Clerk stating the date of submission to the Board for such approval accompanied by two copies of the completed Form C (Application for Approval of a Definitive Plan) receipted by the Board.

(4) The applicant shall also file a letter with the Planning Board at the time of submission granting permission to the Planning Board to enter the property for necessary on-site walks and visits.

(5) The definitive plan shall be prepared by a professional engineer and a land surveyor registered in Massachusetts. All pages shall be recordable and shall be clearly and legibly drawn in accordance with the rules and regulations of the Registry of Deeds as amended pertaining to plan size, material, lettering and related requirements. In addition, it shall contain the following:

    (a) The classification and precision of surveys shall conform to Class A or better of the most recent Land Court Manual of Instruction, Commonwealth of Massachusetts. The plan shall contain the latest Land Court certification requirements.

    (b) The plan shall be at a scale of one inch equals 40 feet or such other scale as the Board may accept to show details clearly and adequately.

    (c) Sheet sizes shall be 24 inches by 36 inches including a three-fourth-inch border.

B. Contents. The definitive plan shall contain the following information:

(1) A title sheet containing the subdivision name, if any, North arrow, legend, title "definitive plan," an index or key of all pages and what information is to be found on each page of the plan, a locus map at a scale of one inch equals 1,500 feet, showing all existing town roads located within 4,500 feet of the site, both within Boxford and within adjacent towns with town boundaries shown, and a location plan at a scale of one inch to 400 feet depending on the size of the subdivision. The location plan shall show the entire subdivision layout, adjacent streets, if any, or streets within a reasonable distance, sufficient to identify the location and the access to the land.

(2) Title block requirement. A title, appearing along the entire right-hand edge of each sheet (see Figure 14[11]), showing the name of the subdivision, if any, in the left-hand corner, the date, scale, the names, seals and signatures and addresses of the engineer and surveyor who made the plan, the name of the owner of record and the subdivider, the page number and provisions for recording revision dates, including a written description of each revision, and suitable space to record the action of the Board and the signatures of all members of the Board, including, where appropriate, the words "Deeds of Easements to be Recorded Herewith" or the words "Covenants to be

---

[11]  Editor's Note: Figure 14 is included at the end of these regulations.

Recorded Herewith" and "Conditions of Approval to be Recorded Herewith," at the same location on all pages.

(3) North arrow, whether true, magnetic or grid and so indicated, and the boundaries of the subdivision indicated by shading. All bench marks set within the subdivision shall be shown, and the reference (starting) bench mark shall be included.

(4) Location and ownership of abutting property as it appears on Form E (Certified List of Abuttors)[12] unless the applicant shall have more recent knowledge of such abutters, so indicated, including all abutting land owned by the applicant not presently being subdivided, and all other land within 500 feet of the boundaries of the land shown in the subdivision.

(5) Major features of the land, such as existing waterways, swamps and water bodies, natural drainagecourses, walls, fences, trails, buildings, septic systems, wells, wooded areas, outcroppings and ditches which exist on or near the site at the time of the survey. Where applicable, aerial photographs may be required.

(6) Lines of existing and proposed streets, ways, lots, lot numbers of each lot, the location on the frontage of the driveway accessing each lot sufficient to accommodate assignment of house numbers, easements and public areas within the subdivision. Each $1/100$ of a mile along the center line of the dedication shall be marked. Letter designation of proposed streets shall be shown in pencil. In lieu of street names, a list of proposed street names, together with a listing with the street letter designation, shall be provided to the Board for review and/or tentative approval. (See § 300-12F.)

(7) Sufficient data to determine the location, direction and length of every street and way line, lot line and boundary line, and to establish these lines on the ground. This shall include the lengths and bearings of plan and boundary lines of all subdivision lot lines, including lot frontage on the streets, of the radii, tangents and central angles of all curves in lot lines and street lines. All roadways shall have center line baselines complete with bearings, distances, curve data and stations shown on both lot layout and construction plans. Points of curvature and tangency shall also be shown. All angle points, or intersections of tangents along the street lines, shall be shown. Areas of lots with lot numbers and the area and totaled frontage on public ways as set forth in MGL c. 41, § 81-L, of adjoining land of the applicant not included in the subdivision shall be shown. The engineer or surveyor shall have the mathematical computations available to present to the Board for a matter of record. It is recommended that traverse computations be placed on a separate or subsequent sheet.

(8) Location of all permanent monuments properly identified as to whether existing or proposed.

(9) Location, names and present widths of streets or private ways bounding, approaching or within reasonable proximity of the subdivision, showing both pavement widths and right-of-way widths.

---

12   Editor's Note: Form E is included at the end of these regulations.

(10) The zoning classification of land shown on the plan and the location of any zoning district boundaries that lie within the locus of the plan. All parcels of land must show total acreage of contiguous buildable area, a street number, anticipated location of driveway curb cuts, a dotted line representation of the boundaries of the calculated contiguous buildable area, conservancy contour lines or boundary of wetland if there is no conservancy district involved, a two-hundred-foot diameter circle at the house site and the total perimeter of the lot and the area of the lot, together with the area of a square lot of the same perimeter, expressed in the following ratio:

$$\frac{\text{Area of lot}}{\text{Area of square lot of same perimeter}} = \underline{\hspace{1cm}} \%$$

All lots shown shall comply with the applicable zoning district requirements for the proposed land utilization, and any parcel which is not buildable under the current Zoning Bylaw shall state "Not a buildable lot." No parcels which do not meet the requirements of a buildable lot under the Zoning Bylaw[13] shall be created where they could otherwise be combined with a buildable lot of the same owner.

(11) Indication of all existing and proposed easements and rights-of-way applying to the land and their purposes, whether or not within the subdivision, and any decision on appeal or any variances or special permits made by the Board of Appeals applicable to the subdivision of the land or any buildings thereon.

(12) If the property that comprises the subdivision or any part or boundary thereof has been examined, approved and confirmed by the Massachusetts Land Court, such information shall be noted on the plan with case numbers and other pertinent references to Land Court procedure, and the same requirement shall apply to any adjoining parcels of land of the applicant.

(13) Existing profiles of the exterior grade at the edge of the shoulder and center line, assuming a pavement, centered on the dedication, drawn in fine black line (dot dash for left, dot dot dash for right side and dash for center line); and proposed profile on the finished center line drawn in fine black solid line at a horizontal scale of one inch equals 40 feet and vertical scale of one inch equals four feet, or such other scales acceptable to the Board. At least two bench marks are to be shown on the profile sheets along with grade elevations at every fifty-foot station except in vertical curves which shall be at every twenty-five-foot station. Bench marks shall be 50 feet to 100 feet from the right-of-way and shall be set approximately every 500 feet. The starting or reference bench mark shall also be shown. All existing and proposed intersections and sidewalks, bikeways and walkways shall be shown with all proposed grade elevations calculated. Elevations shall be referred to the Town Datum (National Geodetic Vertical Datum of 1929). Gradients shall be shown by figures expressed in percent.

(14) Existing and proposed topography with two-foot contour intervals and the one-hundred-year flood elevation calculated according to 310 CMR 10.57. All bench marks shall be noted, as well as items required in § 300-11D. Conservancy Districts shall be shown in accordance with the latest Town Zoning Map. All flood hazard

---

[13]  Editor's Note: See Ch. 196, Zoning.

zones shall be shown in accordance with the latest HUD publication. The topography shall include a sufficient length of the land along existing streets to determine sight distances at proposed new street intersections, drainage runoff and utility locations.

(15) Whenever possible, for the purpose of clarity, the utility plan should be on a separate page. Size and location of existing and proposed water supply mains and their appurtenances, hydrants or water supply sources for fire-fighting purposes, sewer pipes and their appurtenances, and/or sewage disposal systems, storm drains and their appurtenances, and easements pertinent thereto, and curbs and curb dimensions, including data on borings and soil test pits, and method of carrying water to the nearest watercourse or easements for drainage as needed, whether or not within the subdivision. If surface water drains will discharge onto adjacent existing street rights-of-way or onto adjacent properties not owned by the applicant, the applicant shall clearly indicate what course the discharge will take and shall present to the Board, and to the owner of adjacent property, evidence from an engineer that such discharge is satisfactory and permitted by public or private ownership of adjacent street or property.

(16) Drainage calculations shall be submitted in a suitable form along with amplifying plans outlining drainage areas within and affecting the subdivision. A comparison of pre- and post-development stormwater runoff shall be contained in the calculations for peak rates of runoff. A plan shall also be submitted showing the route followed by all drainage discharging from the subdivision to the primary receiving watercourse or other large body of water. Drainage design shall be based on the rational formula ($Q=CIA$). The runoff coefficient "C" shall be determined from the proposed use of land within the watershed with a minimum value of 0.30 to be used. The rainfall intensity shall be determined from the times of concentration and the Yarnell curves. A minimum ten-year storm frequency shall be used for street drainage, a minimum twenty-five-year storm frequency for cross culverts, and a one-hundred-year storm frequency for retention/detention facilities. The minimum time of concentration for street drainage shall be 10 minutes and for cross culverts shall be 10 minutes.

(17) Location and species of all proposed street trees and location of all isolated existing trees (located outside of wooded areas) with trunks over 12 inches in diameter measured four feet above the finished ground level within the road dedication as provided in § 300-15.

(18) Typical cross sections of each street, roadway, drainage ditch and sidewalk to be constructed.

(19) An environmental impact statement shall be submitted in accordance with Schedule A.[14] The document shall be filed with sufficient information to provide a basis for general conclusions about the effect on the environment and the community of the proposed plan compared to any other alternatives permitted under the Zoning Bylaw. In addition, it shall include a statement in writing concerning the status of the proposed project in relationship to the removal, fill or dredge of any bank, flat marsh,

---

[14]  Editor's Note: Schedule A is included at the end of these regulations.

meadow or swamp bordering on any inland water (Wetlands Protection Act, MGL c.a 131, § 40).

(20) The location of all open spaces as defined in § 300-14.

(21) Traffic memorandum.

    (a) For all subdivisions, the applicant shall be required to submit a technical memorandum prepared by a qualified traffic engineer to provide the following existing street information at proposed new street intersections:

        [1] Representative daily traffic and peak hour volumes.

        [2] Available horizontal and vertical sight distance.

        [3] Travel speed measurements and calculation of 85th percentile speed.

    (b) In addition, for all subdivisions over 25 lots, or where otherwise deemed necessary by the Board, the applicant shall furnish a traffic analysis of the impact of the additional traffic to be generated by the proposed development on the adjacent ways and intersections. The study shall be compiled in accordance with the criteria of the American Association of State Highway and Transportation Officials.

(22) The applicant shall simultaneously apply for a request for determination or notice of intent and receive a determination or order of conditions from the Conservation Commission for any wetland impacts resulting from the subdivision and present this information as part of the definitive plan process.[15]

(23) Stump burial pits are prohibited within a subdivision.

(24) The full extent of cuts and fills necessary to construct the roadway, its shoulders and ditches, and drainage structures, shall be shown on the plan as dashed lines.

(25) A list of requested waivers from the requirements of the rules and regulations, if any, shall be submitted with explanation, by the applicant, with the definitive plan, for Board review and consideration.

C. Staking.

    (1) To facilitate review of the definitive plan by the appropriate authorities, at the time of filing of the definitive plan, the applicant shall stake the center line and approximate limits of grading of all proposed streets on fifty-foot center line stations. Cut or fill dimensions to finished grade profile shall be marked on the stakes. The developer shall also stake the center line of all trails at a minimum of every 100 feet.

    (2) If the road was staked in connection with a preliminary plan submittal, the stake out shall be updated to include any alignment or grade changes made.

D. Street soil survey and permeability tests.

---

[15] Editor's Note: See Ch. 192, Wetlands Protection.

(1)  The applicant shall provide soils information from test pits and/or borings at proposed fire protection water tank locations and determine soil strength and groundwater depth. The applicant shall prepare calculations and details to show the proposed tank will be adequately supported and protected from settling when full and from floating when empty.

(2)  The applicant shall also provide soils information from test pits or borings for all other underground structures. The applicant shall establish the suitability of the soil for the proposed storm drainage system and proposed street construction.

(3)  Depending on conditions, the Board or its agent may require test pits, borings or soundings to be taken along the center line of each street shown on the plan at intervals of at least every 200 feet and at other locations and areas of questionable foundation material where the subsurface conditions may, in the opinion of the Board or its agent, affect the quality and service life of the street or the stability of the graded shoulder. Test pits must be observed by the Board or its agent and a registered professional engineer. Where borings are used, samples shall be taken at five-foot vertical depth intervals and at each change in strata. Soundings shall be taken in areas of unsuitable material for the purpose of determining the hard bottom contours. Test pits and borings, where required, shall extend to a minimum depth of five feet below the street profile grade or to bedrock, whichever is less. The applicant shall indicate a proposed layout of the subsurface exploration program on the plan complete with location, spacing and type of exploration proposed.

(4)  Street soil surveys and permeability tests, when required by the Board or its agent, shall include a test excavation not less than seven feet below finished grade at a frequency of one per lot, location of which must be shown on the contour plan, and a report thereon. Permeability tests shall be conducted in the same manner as percolation tests outlined in Title 5 of the Commonwealth of Massachusetts State Environmental Code.

(5)  All information concerning the test pits, borings or soundings (location by station number, depth, soil strata, depth of water table) shall be submitted to the Board in a written report to be made, evaluated, stamped and signed by a registered professional engineer. (Note: "glacial till" is not considered an adequate soil description.)

E.  Procedure.

(1)  Every proposed lot in a subdivision shall be tested in accordance with the provisions of Title 5 of the Massachusetts State Environmental Code, in the presence of a representative of the Board of Health, prior to the time of filing of a definitive plan. At the time of filing of the definitive plan, the applicant shall also file with the Board of Health and the Board two contact prints of the definitive plan, dark line on white background, indicating the location of test holes, soil logs, groundwater elevations, the results of percolation tests performed and location of proposed borrow pit areas. Every lot proposed within the subdivision shall include at least one test hole tested as prescribed above which will indicate a site meeting the requirements of Title 5 of the Massachusetts State Environmental Code for construction of a subsurface sewage disposal system. The Board of Health shall, within 45 days after filing of the plan, report to the Board in writing its approval or disapproval of said plan, and it shall

make specific findings as to which, if any, of the lots shown on such plan cannot be used for building sites without injury to the public health, and include such specific findings and the reasons therefor in such report, and where possible, shall make recommendations for the adjustment thereof. The Board of Health shall send a copy of such report, if any, to the person who submitted said plan.

(2) Transmittal of copies.

    (a) The Board will transmit copies of the definitive plan to town officials as follows:

        [1] Conservation Commission.

        [2] Superintendent of Public Works.

        [3] Fire Department.

        [4] Police Department.

        [5] Inspector of Buildings.

        [6] Board of Assessors.

        [7] Board of Health.

    (b) Before a definitive plan is approved, the Board will request written statements from the above officials with regard to the proposed improvements in the following respect:

        [1] Conservation Commission as to potential involvement with MGL c. 131, § 40, and the effects of the subdivision on streams, wildlife and similar considerations within the scope of the Conservation Commission.

        [2] The Superintendent of Public Works as to the design of the street system, location of easements, monuments, drainage system, water system and, if applicable, a sewage system and their appurtenances, and relationship to existing water and drainage systems.

        [3] The Fire Department as to location of hydrants or water sources for fire-fighting purposes, installation of the alarm system (if applicable) and emergency access.

        [4] Police Department as to street safety, both vehicular and pedestrian, and access for emergency vehicles.

        [5] Inspector of Buildings for compliance with the Boxford Zoning Bylaw.[16]

        [6] Assessors for information on any possible lot line conflicts and for proper recording of known easements and/or encumbrances on the land.

(3) Legal notice requirements. Before taking any action to approve, modify and approve or disapprove a definitive plan, the Board shall hold a public hearing at which parties interested shall have an opportunity to be heard, in person or by agent or attorney. Notice of the time and place of such hearing and of the subject matter, sufficient for

---

16 Editor's Note: See Ch. 196, Zoning.

identification, shall be published in a newspaper of general circulation in the Town of Boxford once in each of two successive weeks, the first publication to be not less than 14 days before the date of the hearing and the second to be not less than seven days before the date of the hearing and by mailing a copy of such advertisement to the applicant. The applicant shall mail by certified mail copies of such advertisement to all owners of land abutting the proposed subdivision, and all owners of land within 500 feet of the property line of the proposed subdivision shown on the plan as shown on the most recent tax list, and submit proof of such mailing to the Board prior to the hearing. Mailing shall be posted no less than 10 days prior to the scheduled hearing. Failure to provide proof shall constitute cause to cancel the hearing.

(4)  Approval, disapproval or modification of definitive plan.

(a)  The procedure that the Board will follow with regard to approval, disapproval or modification of the definitive plan submitted by the applicant will be that as set forth in MGL c. 41, § 81-U, as amended. In summary, the Board, after receiving the plan and profiles, will review the same to determine whether they are in compliance with its adopted rules and regulations.

(b)  The Board, in studying a proposed subdivision plan, will take into consideration the requirements of the town and the best use of the land being subdivided. Particular attention will be given to width, safety, arrangement and location of streets, sanitation, drainage, lot sizes and arrangement of lots, open spaces, trails, parks and other scenic and recreational resources. Adequate street connections will be required to ensure free and safe access to adjoining subdivisions and lands. Easements for future construction of roadways must be provided and shall be conveyed to the Town of Boxford prior to the endorsement of the subdivision plans. Where the street system within a subdivision does not connect with or have, in the opinion of the Board, adequate access from a town, county or state (public) way, the Board may require, as a condition of approval of a plan, that such adequate access be provided by the developer, and/or that the developer make physical improvements to and within such a way of access from the boundary of the subdivision to a town, county or state way which does provide such adequate access. Where the physical condition, contours, topography or width of a public way from which a subdivision has its access is considered by the Board to be inadequate to carry the traffic expected to be generated by such subdivision, the Board may require the subdivider to acquire and/or dedicate a strip of land for the purpose of widening the abutting or connecting public ways to a width at least commensurate with that required within the subdivision, and to make physical improvements to and within such public way to the same standards required within the subdivision. Any such dedication of land for the purpose of creating an adequate width of way and any such work performed within such public way shall be made only with permission of the governmental body having jurisdiction over such way, and all costs of any such acquisition, widening or construction shall be borne by the applicant.

(c)  If in the opinion of the Board additional information or modification of the plan is required, such information or modification shall be submitted to the Board or its agent at least 48 hours in advance of the next regularly scheduled meeting.

EXHIBIT D

§ 300-4                     BOXFORD CODE                     § 300-7

services therein, unless and until a definitive plan of such subdivision has been submitted and approved by the Board as hereinafter provided.

## § 300-5. Source of information required.

In those cases in which the land shown on the plan is abutted by land of an owner not the owner of the land as shown, the Board shall require a statement from the person who prepared the plan as to the source or sources of the information about the location of boundaries. A separate form for such statement will be furnished to the Board, see Form D (Land Surveyor's Certificate).

## § 300-6. More than one building for dwelling purposes on a lot.

Not more than one building designed or available for use for dwelling purposes shall be erected or placed or converted to use as such on any lot in a subdivision.

## § 300-7. Fees.

All expenses for advertising, publication of notices, engineering, professional planning review, plans, inspection of construction, recording and filing of documents and all other expenses in connection with a subdivision, including without limitation sampling and/or testing required by the Board or its agents, shall be borne solely by the applicant. The Board reserves the right to fund and use fees it establishes, pursuant to MGL c. 44, § 53G.

A.  When reviewing an application for, or when conducting, inspections in relation to subdivision approval, the Board may determine that the assistance of outside consultants is warranted due to the size, scale or complexity of a proposed project, because of a project's impact or because the town lacks the necessary expertise to perform the work related to the approval. The Board may require that applicants pay a project review fee consisting of the reasonable costs incurred by the Board for the employment of outside consultants engaged by the Board to assist in the review of a proposed project.

B.  In hiring outside consultants, the Board may engage engineers, planners, lawyers, urban designers or other appropriate professionals who can assist the Board in analyzing a project to ensure compliance with all relevant laws, bylaws and regulations. Such assistance may include, but not be limited to, analyzing an application, monitoring or inspecting a project or site for compliance with the Board's decision or regulations or inspecting a project during construction or implementation.

C.  Funds received by the Board pursuant to this section shall be deposited with the Town Treasurer who shall establish a special account for this purpose. Expenditures from this special account may be made at the direction of the Board without further appropriation. Expenditures from this special account shall be made only for services rendered in connection with a specific project or projects for which a project review fee has been or will be collected from the applicant. Accrued interest may also be spent for this purpose. Failure of an applicant to pay a review fee shall be grounds for denial of the approval sought.

D.  At the completion of the Board's review of a project, any excess amount in the account, including interest, attributable to a specific project shall be repaid to the applicant or the applicant's successor in interest. A final report of said account shall be made available to the applicant or the applicant's successor in interest. For the purpose of this regulation, any person or entity claiming to be an applicant's successor in interest shall provide the Board with documentation establishing such succession in interest.

E.  Any applicant may take an administrative appeal from the selection of the outside consultant to the Town Board of Selectmen. Such appeal must be made in writing and may be taken only within 20 days after the Planning Board has mailed or hand-delivered notice to the applicant of the selection. The grounds for such an appeal shall be limited to claims that the consultant selected has a conflict of interest or does not possess the minimum, required qualifications. The minimum qualifications shall consist either of an educational degree in, or related to, the field at issue or three or more years of practice in the field at issue or a related field. The required time limit for action upon an application by the Board shall be extended by the duration of the administrative appeal. In the event that no decision is made by the Board of Selectmen within one month following the filing of the appeal, the selection made by the Board shall stand.

F.  The fee associated with the engagement of an outside consultant shall not be a fixed amount, but will vary with the costs incurred by the Board.

G.  Fees. The Planning Board, from time to time, and following public hearings will set fees associated with various filings under these subdivision regulations. Such fees will be kept on file at the Planning Board office.

## § 300-8. Zoning Bylaw.

The Board will not approve or modify and approve any plan of a subdivision of land unless all buildings, structures and lots shown on said plan comply with the Zoning Bylaws[3] of the town or a variance and/or special permit from the terms thereof has been granted.

### ARTICLE III
### Procedure for the Submission
### and Approval of Plans

## § 300-9. Plan believed not to require approval.

A.  Submission of plan.

(1)  Any person who wishes to cause to be recorded in the Registry of Deeds or to be filed with the Land Court a plan of land and who believes that his plan does not require approval under the Subdivision Control Law (MGL c. 41) may submit his plan and six contact prints of his plan each folded to 8½ inches by 11 inches maximum, with title side out thereof, along with the original Mylar or linen, and two copies of a

---

3   Editor's Note: See Ch. 196, Zoning.

EXHIBIT E

# ZONING

# Chapter 196

# Town

# of

# BOXFORD



*www.generalcode.com*
*72 Hinchey Road*
*Rochester, New York 14624*
*March 2001*

G. Watercourse yards. There shall be a yard or setback between any building or structure in any district and a watercourse, stream, swamp or floodway of a width to leave the area subject to flooding free of obstruction.

H. Appurtenant open space. No yard or other open space required for a building by these bylaws shall, during the life of such building, be occupied by or counted as open space for another building.

I. Projections. Nothing herein shall prevent the projection of steps, unroofed porches, cornices, windowsills, built courses and other ornamental features into any required yard.

J. Corner clearance. Within an area formed by the side line of intersecting streets and a line joining points on such lines 15 feet distant from their point of intersection, or in case of a rounded corner, from the point of intersection of their tangents, no structure shall be erected and no foliage maintained between a height of 3½ feet and a height of eight feet above the plane through their curb grades.

K. Irregularly shaped lots. [Added 5-14-1986 ATM, Art. 36; amended 5-2-1987 ATM, Art. 46; 5-22-1997 ATM, Art. 66]

   (1) Following acceptance of this subsection, no lot for residential use shall be laid out which is irregular in shape:

      (a) A lot with at least 250 feet of street frontage is substantially irregular in shape if the area of the lot is less than 50% of the area of a square lot of the same perimeter.

      (b) A lot with less than 250 feet of street frontage is substantially irregular in shape if the area of the lot is less than 20% of the area of a square lot of the same perimeter.

   (2) The aforementioned percentage standards may be applied to the entire lot or, at the discretion of the owner, to the minimum lot area which conforms to all other requirements of this bylaw.

§ 196-25. Accessory buildings and structures. [Amended 5-9-1990 ATM, Art. 23; 5-11-1999 ATM, Art. 37]

Accessory buildings and structures, including detached garages, shall not be closer than 50 feet from the front lot line, nor any closer to any side or rear line than the height of such accessory building above the ground or 20 feet, whichever is greater, except structures used for housing animals which shall be set back 50 feet from all lot lines. No accessory building shall be located closer than 20 feet from any dwelling or main structure on a lot unless both structures conform with Building Code regulations relative to fire safety.

§ 196-26. Off-street parking and loading areas.

A. Off-street parking spaces and loading areas shall be required in at least the ratio specified below for the following uses of land and buildings:

EXHIBIT F

# Gary S. Sackrider
**Attorney at Law**
100 Cummings Center
Suite 207P
Beverly, Massachusetts 01915

———

Tel: (978) 745-8850

February 19, 2004

Pat Shields, Town Clerk
Town of Boxford
Town Hall
7A Spofford Road
Boxford, Massachusetts

    RE:   NOTICE OF APPEAL

Dear Pat:

    This letter is being submitted on behalf of myself and my wife, Mary Sackrider pursuant to M.G.L. c. 41, sec. 81BB. Your records should reflect that we both live at and own the property located at 154 Spofford Road in Boxford. On behalf of both Mary and I, I am hereby notifying you, pursuant to statute, of our appeal from a decision of the Boxford Planning Board. The decision appealed from is a purported revocation by the Boxford Planning Board of the constructive grant of subdivision dated February 12, 2004 (copt attached). I believe that decision was filed with you today.

    Yours truly,

*Gary S Sackrider*

Gary S. Sackrider

HAND DELIVERED ON FEBRUARY 19, 2004



**TOWN OF BOXFORD**
**PLANNING BOARD**
7A Spofford Road
Boxford, Massachusetts 01921
Phone: (978) 887-6000   Fax: (978) 887-3466

*Received and Filed at Town Clerk's Office, Boxford, Massachusetts on 2/12/04 by [signature]*

February 12, 2004

Patricia Shields, Town Clerk
Boxford Town Hall
Boxford, Massachusetts 01921

      Re: <u>Definitive Subdivision Plan dated August 15, 2003 at 154 Spofford Road;</u>
      <u>Applicant Gary Sackrider</u>

Dear Ms. Shields:

Pursuant to MGL Chapter 41, section 81W, at a public hearing held on February 11, 2004, after notice and publication, the Planning Board voted unanimously to rescind any constructive approval of the Definitive Subdivision Plan submitted for 154 Spofford Road because the Plan does not comply with the Planning Board Rules and Regulations for the following reasons:

1. Insufficient evidence submitted relating to wetland resource areas at the site and impacts of alteration of wetlands onsite and offsite caused by the development;
2. Failure to delineate all wetland resource areas as required by the regulations;
3. Insufficient evidence submitted showing mitigation of flooding, alteration of onsite vernal pool, and flooding of adjacent properties;
4. Insufficient evidence submitted regarding mitigation of existing drainage problems;
5. Insufficient evidence submitted regarding mitigation of elevated groundwater flow as a result of construction impacts;
6. Insufficient evidence submitted regarding potential tree damage and trespass as to properties adjacent to proposed roadway;
7. Failure to file a septic system design;
8. Failure to file Definitive Subdivision Plans with Board of Health;
9. Failure to obtain recommendation from Board of Health;
10. Failure to provide soils analysis and percolation test data for the roof recharge area as well as an analysis of the effectiveness of the infiltration and storm water recharge;
11. Failure to file notice with Natural Heritage and Endangered Species Program relative to priority habitat as required by the Subdivision Rules and Regulations;
12. Failure to propose mitigation measures regarding alteration of endangered species habitat and vernal pool at the project site;
13. Failure to comply with Boxford Zoning Bylaw as the 200-foot circle for the existing residence impermissibly encroaches within the 50-foot front setback pursuant to Section 196-24.D(2);
14. Failure to file a Notice of Intent with the Conservation Commission or ANRAD data (test bores supervised by Cons Comm.) to verify accuracy of wetlands boundaries as required by the Subdivision Regulations;
15. Failure to locate property owner Reid's well at 157 Spofford Road, on the Subdivision Plan;

16. Failure to locate the path of buried utilities in accordance with regulations pertaining to new subdivisions;

17. Failure to indicate the location of the required sub-terrain fire/water reserve tank as required for new subdivisions;

18. The existing well for new Lot 1 will be non-conforming and is within 50 feet of the proposed public road;

19. Failure to comply with zoning in that the well for Lot 2 appears to be within 80 of a wetland resource area and the 200 ft circle encroaches within the 50 foot setback for a wetlands;

20. The original Environmental Impact Statement is outdated, having been invalidated by the new discovery from the test borings supervised by Fred Geisel, PE and subsequent major re-design of road elevations and water run-off flows, as a result, the impact statement fails to provide sufficient information to make conclusions about the effect on the environment such as drainage, flooding and groundwater levels;

21. Insufficient evidence submitted regarding compliance with roadway design standards;

22. Failure to provide sufficient information regarding potential damage to vernal pool and adjacent residential wells regarding detention basin on Lot 1;

23. Failure to show all natural features as required by the regulations;

24. Failure to provide location of adequate fire tanks on plan;

25. Failure to show existing easements on the plan;

26. Failure to provide adequate drainage system regarding Basin C;

27. Failure to address high ground water mitigation as it effects Basins A and B;

28. Failure to obtain recommendations from Police, Fire and DPW;

29. Failure to provide written responses to comments regarding plan noncompliance submitted by town's engineer VHB and consultant Fred Geisel, PE; and

30. Failure to submit payment in escrow for town's engineering and hydrological consultant pursuant to the regulations which constitutes grounds for denial.

Respectfully submitted,

*Robert C. Gore (Chr)*

Robert C. Gore, Chairman


cc:    Gary Sackrider (certified and regular mail)
      Building Inspector
      Conservation Commission
      Board of Health
      Department of Public Works
      Board of Selectmen

# Gary S. Sackrider
### Attorney at Law
100 Cummings Center
Suite 207P
Beverly, Massachusetts 01915

Tel: (978) 745-8850

January 28, 2004

Pat Shields, Town Clerk
Town of Boxford
Town Hall
7A Spofford Road
Boxford, Massachusetts

```
RECEIVED
JAN 2 9 2004
BOARD OF SELECTMAN
BOXFORD, MASSACHUSETTS
```

RE:    NOTICE OF APPEAL

Dear Pat:

This letter is being submitted on behalf of myself and my wife, Mary Sackrider pursuant to M.G.L. c. 41, sec. 81BB. Your records should reflect that we both live at and own the property located at 154 Spofford Road in Boxford. On behalf of both Mary and I, I am hereby notifying you, pursuant to statute, of our appeal from two decisions of the Boxford Planning Board. The first decision appealed from is four conditions imposed as part of the constructive grant of our subdivision on or about January 16, 2004. The second decision appealed from is the January 21, 2004 revocation by the Boxford Planning Board of the constructive grant of subdivision. I believe the January 21, 2004 decision was filed with you on January 24, 2004.

A copy of our Land Court complaint is provided herewith, as required by law.

Yours truly,

*Gary S. Sackrider*

Gary S. Sackrider

HAND DELIVERED ON JANUARY 29, 2004

§ 300-13                         SUBDIVISION OF LAND                         § 300-15

E. Access shall be provided to adjacent parcels or landlocked property as required by the Board. Public access shall be provided via rights-of-way transferred in fee to the town. Rights-of-way shall conform to the requirements of § 300-12C for minor streets and § 300-12B(5).

F. In all cases, rights-of-way or fee ownership of parcels may be required by the Board in lieu of easements if this is deemed by the Board to be in the best interest of the town.

G. Wherever embankments are built in such a way as to require approval by the Board, the developer must furnish to the town duly recorded access easements free of encumbrances for maintenance of the slopes, terraces or retaining walls.

H. When easements are required by the Planning Board pursuant to this section, the applicant shall provide a written instrument in a form suitable to the Board.

## § 300-14. Open space.

Before approval of a plan, the Board may also, in proper cases, require the plan to show a park or parks, suitably located for playground or recreation purposes or for providing light and air. The park or parks shall not be unreasonable in area in relation to the land being subdivided and to the prospective uses of such land and shall be at least equal to two acres of land for each 20 single-family dwelling units or fraction thereof shown on the plan. The area shall be equal to three times the floor area of all other dwelling units and 10% of the land area for all nonresidential subdivisions. The Board may, by appropriate endorsement on the plan, require that no building be erected upon such park or parks without its approval for a period of three years. Each area reserved for such purpose shall be of suitable area, dimensions, topography and natural character for the purposes of a park and/or playground. The area or areas shall be so located as to serve adequately all parts of the subdivision as approved by the Board. The Board may require that the area or areas reserved shall be located and laid out so as to be used in conjunction with similar areas of adjoining subdivisions or of probable subdivision. Land acquired in this manner shall be compensated as provided in MGL c. 41, § 81-Q.

## § 300-15. Protection of natural features.

Due regard shall be shown for all natural features, such as trees, wooded areas, watercourses, water sources, wetlands, recharge areas, scenic points, historic spots and similar community assets, which if preserved will add attractiveness and value to the community. Any cutting, backfilling, clearing, thinning or other disturbance to trees 12 inches or over in diameter measured four feet above finished ground level or to other natural vegetation, located within the road dedication, shall be prohibited unless deemed both proper by the Board and not in conflict or contradiction to the intent of § 300-16. Any such proposed clearing shall be shown on the plan and written reasons therefor may be requested by the Board. Tree wells or retaining walls should be installed when and as requested by the Board for suitable grading around trees. Tree wells or retaining walls shall be of such design to meet the standards as set forth in the Tree Experts Manual or some similar publication. The Board may specify plantings in order to revegetate areas disturbed by grading or to create screening where inadequate natural vegetation exists.