UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-10406-MEL

GARY SACKRIDER and MARY
SACKRIDER,

    Plaintiffs

v.

ROBERT GORE, ROBERT FORD, HOLLY
LANGER, JOSEPH HILL, J. STEVEN
MERRIAM, JR., ELLEN NESTERVICH, and
ROBERT STEVENS, as they are the Members
of the Boxford Planning Board, BARBARA
JESSEL, CHARLES COSTELLO, NEIL
OLANSKY, ROBERT WAS AND JOSEPH
CALLAHAN, as they comprise the Board of
Selectmen for the Town of Boxford,

    Defendants

MEMORANDUM OF REASONS IN
SUPPORT OF THE DEFENDANTS'
PARTIAL MOTION TO DISMISS

I.   INTRODUCTION

The plaintiffs, Gary and Mary Sackrider (the "Sackriders"), have filed a multi-count complaint appealing actions taken by Robert Gore, Robert Ford, Holly Langer, Joseph Hill, J. Steven Merriam, Jr., Ellen Nestervich, and Robert Stevens, as they are the Members of the Boxford Planning Board (collectively referred to herein as the "Planning Board") in relation to an application for subdivision approval (Counts One, Two and Three); seeking declaratory judgment as to their rights to their property, whether Planning Board members acted in a conflict of interest, and whether an application under the Scenic Roads Act has been constructively granted (Count Four, Eight and Nine), challenging, on a constitutional basis, the Subdivision Rules and Regulations of the Town of Boxford (Counts Five, Six); and challenging the validity and application of a section of the Boxford Zoning Bylaws (Count Seven). The Sackriders

complain that Boxford officials, regulations or bylaws have violated their rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Second Amended Complaint, ¶24, 65, 70. The Sackriders also repeatedly assert that the actions of Boxford officials, regulations or bylaws effect a taking of their property without just compensation. Second Amended Complaint, ¶¶54, 88, 99(a). The Sackriders' prayers for relief repeatedly request that the actions of Boxford officials, or regulations or bylaws themselves be declared unconstitutional. Second Amended Complaint, ¶¶61(d), 70(a), 99(a).

The Sackriders' claim of a regulatory taking in violation of their rights under the U.S. Constitution is unripe, as they have failed to initiate, let alone complete, the judicially-provided remedy for an allegation of a taking without just compensation, namely that provided in the comprehensive statutory scheme set forth in G.L. c.79.

The Sackriders have also failed to state a claim upon which relief may be granted for a violation of their due process rights as protected by the Fifth and Fourteenth Amendments. They have identified no property interest of which they have been deprived in violation of their due process rights, they have adequate post-deprivation remedies available, and the defendants' behavior is not "conscience-shocking" so as to form a basis for a substantive due process claim. Furthermore, the challenges to the Boxford Zoning Bylaws and Subdivision Rules and Regulations fail as each challenged regulation bears a substantial relationship to the public health, safety and welfare.

The defendants therefore respectfully request that this Honorable Court dismiss the Sackriders' claims of a regulatory taking and violations of their right to due process as either unripe or for their failure to state a claim upon which relief may be granted.

II.     FACTS & PROCEDURAL HISTORY[1]

1.    On September 3, 2003, the Sackriders' engineer filed the definitive subdivision plan and supporting materials with the Boxford Planning Board at its regular meeting. Second Amended Complaint, ¶15. The plan called for dividing a six acre parcel of land into two lots and creating a new 600+ foot road. On the same date, the Planning Board announced that the public hearing had commenced. Id.

2.    In September, 2003, the Planning Board Administrator distributed copies of the definitive subdivision plan to various Boxford boards including the Conservation Commission and the Board of Health. Second Amended Complaint, ¶16.

3.    The public hearing was continued through various Planning Board meetings from September 3, 2003 through December 17, 2003. Second Amended Complaint, ¶17. During this period, the Planning Board made it clear to the plaintiffs that the defendants would require the following conditions in order for the plaintiffs to obtain definitive subdivision approval, even though the Sackriders at various times requested that such conditions be waived:

(a)    installation of a 20,000 gallon water tank for fire protection purposes, a taking for public purposes without just compensation;

(b)    a demand that the 2 existing electric poles be replaced with underground utilities when the new Town Hall (right down the street) started its underground utilities from the second pole into their property during this same time period;

(c)    road width of 20 feet, although the connecting Spofford Road was recently restored and repaved by the Town at 18 feet; and

(d)    not allowing the new road to be a private way. Id.

---

[1] The Facts recited herein taken from the Second Amended Complaint and are accepted as true for the purposes of the Motion to Dismiss only, as required by Mass. R. Civ. P. 12(b)(6). See Coyne v. Somerville, 972 F. 2d 440 (1st Cir. 1992).

Additionally, the planning board indicated that it was their policy not to grant waivers. Id.

4. At the December 17, 2003 meeting, the Planning Board directed the Sakcriders to file a Request for Determination with the Boxford Conservation Commission. Second Amended Complaint, ¶18. The plaintiffs objected to the demand and would not agree to do so. Id. The Planning Board then continued its hearing on the matter without the Sackriders' consent, until which ever came first: January 21, 2004; or until there was a joint meeting with the Boxford Conservation Commission and the Boxford Planning Board, to be initiated by the plaintiffs' as part of a Request for Determination. Id.

5. As of January 20, 2004, the Boxford Planning Board failed to take final action on the definitive subdivision plan or file with the Town Clerk a certificate of any action regarding the plan, although one hundred thirty-five days had passed after submission of the plan. Second Amended Complaint, ¶19. As of that date, the Boxford Board of Health had also not responded to the Sackriders' subdivision plan, which had been provided to them by the Planning Board Administrator in September, 2003. Id.

6. Section 300-7 of the Boxford Rules and Regulations provide for the retention of outside consultants when the Planning Board determines "that the assistance of outside consultants is warranted due to the size, scale or complexity of a proposed project, because of a project's impact or because the town lacks the necessary expertise to perform the work related to the approval." Second Amended Complaint, Exhibit D. "The Board may require that applicants pay a project review fee consisting of the reasonable costs incurred by the Board for the employment of outside consultants engaged by the Board to assist in the review of a proposed project." Id. Section 300-7 also authorizes an "administrative appeal from the selection of the

4

outside consultant to the Town Board of Selectmen" on the grounds that the consultant has a "conflict of interest or does not possess the minimum, required qualifications." Id.

7. Section 300-11E of the Boxford Rules and Regulations provides procedures for submitting a definitive plan, requires the Planning Board to transmit the definitive plan to the Conservation Commission, Superintendent of Public Works, Fire Department, Police Department, Inspector of Buildings, Board of Assessors, and Board of Health for written comments. Second Amended Complaint, Exhibit C. It also states that the Board will submit a plan to an independent engineering service for review at the applicant's expense by payment into an escrow account after an itemized budget is provided. Id. Failure to establish the escrow account constitutes grounds for denial of the definitive plan. Id.

III.   ARGUMENT

    A.   Motion to Dismiss Standard

A jurisdictional challenge based on the ripeness of the complaint is considered a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. See Ernst & Young v. Depositors Econ. Protection Corp., 862 F. Supp. 709, 713 (D.R.I. 1994); see also St. Clair v. City of Chico, 880 F.2d 199, 202 (9th Cir. 1989), cert. denied, 493 U.S. 993 (1989). "'[A] court's lack of subject matter jurisdiction is a nonwaivable issue that can be raised by either party at any point in the proceedings.'" Fusaro v. Blakely, 40 Mass. App.Ct. 120, 123, 661 N.E. 2d 1339 (1996) (quoting Shea v. Neponset River Marine & Sportfishing, Inc., 14 Mass.App.Ct. 121, 129, 437 N.E. 2d 250 (1982)); see also City of Boston v. Massachusetts Port Auth., 364 Mass. 639, 645, 308 N.E. 2d 488 (1974); Jones v. Jones, 297 Mass. 198, 202, 7 N.E. 2d 1015 (1937). Here, the plaintiff has asserted an unripe count for a regulatory taking in violation of the Fifth and

Fourteenth Amendments of the United States Constitution. As the count lacks ripeness, this court is without subject matter jurisdiction over the claim and it must be dismissed.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. Fed.R.Civ.P. 12(b)(6); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). However, "[b]ecause only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir.1991). Rather, plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. Id. at 23 (citing Correa-Martinez, 903 F.2d at 52; Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989); Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957)). In order to survive a motion to dismiss, plaintiffs must set forth in their complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

The pleading rules are "not entirely toothless," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir.1990) and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. City of Cambridge, 932 F.2d 51, 62 (1st Cir. 1991). A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley, 851 F.2d at 515). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming, 922 F.2d at 23. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 114 n.8 (1st Cir. 1992); Dartmouth Review, 889 F.2d at 16. The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert, 932 F.2d at 62. "A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts. We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." Gilbert, 932 F.2d at 62 (citing Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983)), Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978). "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id. Finally, to plead a justiciable case, a plaintiff must allege a "'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" AVX Corp., 962 F.2d at 114 n. 8 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

As set forth in greater detail below, the Sackriders' claims that their due process rights were violated and that they were the victims of abuse of process are utterly lacking in factual

7

support and therefore fail to state a claim upon which relief may be granted and should be dismissed from the Second Amended Complaint.

  B.  <u>The Sackriders' Claim of A Taking Without Just Compensation Is Not Ripe</u>

In the takings context, "no constitutional violation occurs until just compensation has been denied." <u>Williamson County Reg'l Planning Comm'n</u> v. <u>Hamilton Bank</u>, 473 U.S. 172, 194 n. 13 (1985). In <u>Williamson</u>, the United States Supreme Court held that a property owner's claim that the regulation of his property was so onerous that it amounted to a "taking" was premature, because the state provided for an inverse condemnation action to obtain just compensation for private property that had been allegedly taken.[2] <u>Williamson</u>, 473 U.S. at 194. The Court found that a taking claim is not ripe until petitioners "seek compensation through the procedures that the state has provided for doing so." <u>Id.</u> If the state "provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation, an owner of property has no cognizable claim against the State in respect to an alleged confiscation." <u>Gilbert</u>, 932 F.2d at 63, <u>cert. denied</u>, 502 U.S. 866 (1991).

The United States District Court of Massachusetts has recognized that "Mass.Gen.L. ch. 79 provides a means by which a plaintiff may seek redress for an alleged deprivation of property" and "that remedy has been found to be adequate." <u>Marietta Realty, Inc.</u> v. <u>Springfield Redevelopment Auth.</u>, 902 F.Supp. 310, 313 (D.Mass. 1995). In <u>Marietta</u>, the defendant had made an announcement that the plaintiff's property would be taken, but the defendant then failed

---

[2] While this case analyzes takings in violation of the Fifth Amendment, the same analysis applies for alleged takings in violation of the Massachusetts Declaration of Rights. No Massachusetts appellate court has determined that Article X of the Massachusetts Declaration of Rights provides a landowner greater or lesser rights than the Fifth Amendment to the United States Constitution, for purposes of takings analysis. <u>Cf.</u> <u>Bromfield</u> v. <u>Treasurer & Receiver Gen.</u>, 390 Mass. 665, 668, 459 N.E.2d 445 (1983) (state constitution affords parallel protection to United States Constitution of takings claims); <u>Davidson</u> v. <u>Commonwealth</u>, 8 Mass. App. Ct. 541, 546-547 n.7, 395 N.E. 1314 (1979). As the protection afforded under the state and federal constitutions in this regard is "parallel," no distinguishable state law standard or analysis exists. In short, regardless of whether the plaintiff's taking claim is based upon the state or federal constitutions, the analysis, and more importantly, the outcome, is the same.

to execute the acquisition. The plaintiff brought claims under 42 U.S.C. §1983 and §1985, claiming that the property had been taken due to the decrease in its value. The Court decided that, as the plaintiff had failed to pursue G.L. c. 79, the holding in Williamson barred the constitutional claims. Id.

As in Williamson and Marietta, the Sackriders here claim that the decision of a public authority has effectively taken their property, but the Sackriders have failed entirely to pursue the remedies provided to them by G.L. c. 79, a comprehensive statutory scheme allowing property owners to pursue compensation for property allegedly taken. Under these circumstances, the holding in Williamson clearly controls. That holding bars a plaintiff from bypassing the judicial procedure created by the Legislature for the award of compensation for a taking by attempting to bring a takings claim pursuant to the U.S. Constitution. Accordingly, the Sackriders' claims for a taking must be dismissed for lack of ripeness.

C. The Sackriders Have Failed to State A Claim Upon Which Relief May Be Granted For A Violation of Their Right to Due Process Under the U.S. Constitution

The Sackriders complain that their right to due process as protected by the Fifth and Fourteenth Amendment to the U.S. Constitution and the Massachusetts Declaration of Rights was violated because the Planning Board refused to waive certain conditions for subdivision approval (Second Amended Complaint, ¶24), and the Boxford Subdivision Rules and Regulations, §300-7 and 11E, do not require independent consultants to be "objective, impartial and honest," "provide reasonable accountings in reasonable time periods," "prohibit imposition of unreasonable fees," or "provide for an appeals process where the applicant can protect himself from wasteful spending." Second Amended Complaint, ¶64, 68, 70.

1. The Refusal of the Planning Board to Grant the Sackriders' Requests for Waivers from Conditions of Subdivision Approval Is Not a Due Process Violation

The Sackriders' allegations fail to state a claim upon which relief may be granted for a violation of either their procedural or substantive due process rights. To plead a procedural due process claim, the plaintiffs must show that they had a property interest in the requested waivers to the subdivision conditions allegedly imposed by the Planning Board and such property interest was deprived without adequate due process.[3] Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). To plead a substantive due process claim, the plaintiffs must show that the defendants violated an identified liberty or property interest protected by the due process clause, or that the defendants' conduct is such that it "shocks the conscience." Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991).

    a. The Plaintiffs Have No Property Interest in Waivers to Subdivision Conditions And Their Due Process Claims Should Be Dismissed

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). In other words, where a local authority has discretion to act, any entitlement claim to positive action asserted by the plaintiffs is negated. Planning Boards have broad discretion in the determination whether to waive conditions for subdivision approval. The Subdivision Control Act, G.L. c.41 §81M, states:

---

[3] Aside from the plaintiffs failure to identify a property interest, the post-deprivation remedies available to them bar any claim for violations of their rights to procedural due process. "[A] procedural due process claim is not actionable unless, inter alia, no adequate 'post-deprivation remedy' is available under state law." See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994); Burnham v. City of Salem, Mass., 101 F.Supp.2d 26, 35 (D.Mass. 2000). In the present case, the Sackriders not only have a state-provided avenue of redress, but they have taken it in the form of an appeal pursuant to G.L. c.41 §81BB (Count I).

10

> It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to subdivisions of land; provided, however, that such board <u>may, when appropriate</u>, waive, as provided for in section eighty-one R, such portions of the rules and regulations as is deemed advisable." (emphasis supplied).

The use of the word "'may' ... 'imports the existence of discretion.'" <u>Shea</u> v. <u>Bd. of Selectmen of Ware</u>, 34 Mass. App.Ct. 333, 336, 615 N.E.2d 196 (1993) (quoting <u>Hunters Brook Realty Corp.</u> v. <u>Zoning Bd. of Appeals of Bourne</u>, 14 Mass. App. Ct. 76, 80, 436 N.E.2d 978 (1982)). Where the Legislature seeks to impose a mandatory obligation, it uses the word "shall." <u>United States</u> v. <u>Ganz</u>, 48 F. Supp. 323, 327 (D.Mass. 1942). Therefore the use of the word "may" is interpreted to confer discretion. <u>Id.</u>, see also <u>United States</u> v. <u>Rodgers</u>, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). As waiver of subdivision rules and regulations is wholly within the discretion of the Planning Board, the plaintiffs had no legitimate claim of entitlement to such waivers, and therefore no property interest in them. As the plaintiffs had no property interest in the waivers, they have not stated a claim for the violation of their procedural due process rights in the alleged denial of the waivers. They have further failed to state a claim for a violation of their substantive due process rights, unless they have pled sufficient factual allegations to demonstrate that the defendants engaged in "conscience shocking conduct." As discussed below, they have failed to plead such factual allegations and any claim for a violation of their due process rights should be dismissed.

    b.    The Plaintiffs Have Not Plead Factual Allegations to Support A Claim That Their Substantive Due Process Rights Have Been Violated

The plaintiffs have similarly failed to state a claim for a violation of their substantive due process rights. As discussed in Section III.C.1(a), the plaintiffs have identified no property interest of which they have been deprived. They must therefore plead sufficient factual

11

allegations to support a claim that the defendants' conduct was so conscience shocking as to violate their right to substantive due process.

The United States Court of Appeals for the First Circuit and the Supreme Judicial Court have repeatedly expressed its reluctance to entertain substantive due process challenges to land use decisions by local boards. See, e.g., PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) ("This Court has repeatedly held…that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process."); Chiplin Enters., Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir. 1983) (alleging unreasonable delay on application for building permit); Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982); see also Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990) (alleging state licensing board misuse of administrative process in refusing reinstatement of surveyor's license); Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 646 N.E.2d 139 (1995) (reversing jury verdict of substantive due process violation against planning board), rev. denied, 516 U.S. 931 (1995). "Indeed, the First Circuit has held that denials, suspensions, and revocations of permits or professional licenses, including those involving procedural irregularity, do not ordinarily implicate substantive due process." See Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119, 125 (D. Mass. 1999); Chongris v. Bd. of Appeals of Andover, 811 F.2d 38, 42 (1st Cir. 1987), cert. denied, 483 U.S. 1021 (1987).

A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are "shocking or violative of universal standards of decency." Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979), cert. denied, 444 U.S. 1035 (1980)). The First Circuit has particularly required "conscience shocking" behavior to be established for a plaintiff to pursue a claim for substantive due process in the zoning context.

See Licari v. Femizzi, 22 F.3d 344, 349 (1st Cir. 1994). The level of misconduct must be "stunning, evidencing more than humdrum legal error." Amsden, 904 F.2d at 754 n.5. It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority," Creative Env'ts., Inc., 680 F.2d at 833, or that it committed an outright violation of state law, Chiplin Enters., Inc. 712 F.2d at 1528. "It is bedrock law in this circuit[ ] ... [ ] that violations of state law--even where arbitrary, capricious, or undertaken in bad faith--do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992).

In PFZ Properties, the First Circuit, reviewing the failure of a planning agency to act on an application for over four years, refused to consider this as "conscience shocking" activity. PFZ Properties, 928 F.2d at 31-32. In so ruling, the Court stated "[e]ven assuming that [the agency] engaged in delaying tactics and refused to issue permits for the...project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label." Id. Similarly, in Chiplin Enteprises, the First Circuit refused to find a substantive due process violation when a planning board, after granting preliminary approval to a development project, denied a building permit for the project. The Court stated "[a] mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct error." Chiplin Enterprises, 712 F.2d at 1528. Finally, in Freeman, the Supreme Judicial Court reversed a jury verdict finding a violation of substantive due process where a Planning Board repeatedly delayed granting approval of a subdivision application over a number of years and refused to comply with orders of a Superior Court judge, again stating that the actions of the Planning Board, even

if made in error or bad faith, did not violate the plaintiff's constitutional rights. <u>Freeman</u>, 646 N.E. 2d at 149.

The Sackriders have simply failed to plead any factual support for their conclusory allegation that their substantive due process rights were violated, merely because the Planning Board did not acquiesce to their demand for waivers from certain conditions to a subdivision approval. <u>Compare</u> <u>Greenspring Racquet Club, Inc.</u> v. <u>Baltimore County</u>, 70 F.Supp.2d 598 (D. Md. 1999) (the mere act of denying applicant's request for exemption from height and floor area ratio requirements of county's zoning ordinance was not type of state action which was so arbitrary or irrational as to reach constitutional proportions and substantive due process claim could not be maintained). They have not demonstrated that the refusal to grant such waivers were in any way "shocking or violative of universal standards of decency" or even a violation of state or local law. <u>Amsden</u>, 904 F.2d at 757. To the contrary, both state and local law grant the Planning Board discretion to determine whether or not such waivers are appropriate. While an applicant may be aggrieved by the Planning Board's decision that such waivers were not warranted, such decision is not a violation of the applicant's due process rights.

2.  Sections 300-7 and 11E of the Boxford Subdivision Rules and Regulations Do Not Violate the Sackriders' Right to Due Process

"'[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscious or interferes with rights implicit in the concept of ordered liberty.'" <u>Currie</u> v. <u>Group Ins. Comm'n</u>, 290 F.3d 1, 26 (1st Cir. 2002) (<u>quoting</u> <u>Commonwealth</u> v. <u>Bruno</u>, 432 Mass. 489, 503, 735 N.E.2d 1222 (2000)). "Under the Massachusetts Constitution, 'legislation must bear a 'real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.'" <u>Currie</u>, 290 F.3d at 26 (<u>quoting</u> <u>Chebacco Liquor Mart, Inc.</u> v. <u>Alcoholic Beverages Control Comm'n</u>, 429 Mass. 721, 724, 711 N.E.2d 135 (1999)).

14

The test to be applied in considering substantive due process challenges to a land use ordinance was established early on: "a court should not set aside the determination of public officers in [land use] matter[s] unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' " Nectow v. City of Cambridge, 277 U.S. 183, 187-88 (1928) (quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)); Smithfield Citizens for Fair Zoning v. Town of Smithfield, 907 F.2d 239, 243-44 (1st Cir.1990). Thus, in adjudicating such a claim "a court asks only whether a conceivable rational relationship exists between the ... ordinance and legitimate governmental ends." Smithfield, 907 F.2d at 244 (emphasis in original); see also Tenoco Oil Co. v. Dept. of Consumer Affairs, 876 F.2d 1013, 1021-22 & n.15 (1st Cir. 1989). The courts have discouraged broad challenges to regulations under the rubric of substantive due process. South County Sand & Gravel Co., Inc. v. Town of South Kingstown, 160 F.3d 834 (1st Cir. 1998). "The Court has displayed a propensity to analyze claims premised on allegedly onerous land use regulation under the Takings Clause." Id. (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1017-19 (1992)).

Section 300-7 calls for the retention of outside consultants. The stated purpose for the regulation is:

> When reviewing an application for, or when conducting, inspections in relation to subdivision approval, the Board may determine that <u>the assistance of outside consultants is warranted due to the size, scale or complexity of a proposed project, because of a project's impact or because the town lacks the necessary expertise to perform the work related to the approval</u>. The Board may require that applicants pay a project review fee consisting of the reasonable costs incurred by the Board for the employment of outside consultants engaged by the Board to assist in the review of a proposed project.

15

Similarly, Section 300-11E states that the Board will submit a plan to an independent engineering service for review at the applicant's expense by payment into an escrow account after an itemized budget is provided. See Section 300-11E. Failure to establish the escrow account constitutes grounds for denial of the definitive plan. Id. The rational relationship exists between these regulations and legitimate governmental ends is apparent on the face of the regulation: where a project is deemed too complex, large, or to require an expertise beyond that of the Planning Board, the Planning Board may retain an outside consultant for which the applicant may be required to pay reasonable costs. Independent engineers are required to lend their expertise and the costs of their services are provided to the applicant in an itemized budget before the applicant is required to pay for them in the form of an escrow account.

Such regulations are specifically authorized by state statute. See G.L. c.41 §81Q (authorizing adoption of subdivision rules and regulations); G.L. c.44 §53G ("any city or town that provides by rules promulgated under ... section eighty-one Q of chapter forty-one ... for the imposition of reasonable fees for the employment of outside consultants may deposit such fees in a special account."). The wisdom of permitting the laypersons that generally populate a volunteer Planning Board to retain outside consultants is demonstrated by the broad range of topics a typical definitive subdivision plan will address: "the location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services therein,...the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein,...underground distribution systems... for any and all utility services, including electrical and telephone services,...poles and any associated overhead structures...for use for police and fire alarm boxes and any similar municipal equipment and for use for street lighting...use of

16

solar energy systems…orientation of new streets, lots and buildings; building set back requirements from property lines; limitations on the type, height and placement, of vegetation". G.L. c.41 §81Q.

The plaintiffs argue, however, that the Section 300-7 and 11E are not only unconstitutional on their face, but as applied to their property. They do not, however, provide any concrete factual allegations on which to base their argument and instead provide subjective characterizations that the defendants "have wasted" the $5,000 deposited by the Sackriders by hiring two engineering firms "to do the same work" and the Sackriders believe one of them is "either not honestly objective or incompetent…[and] clearly hired by the defendants to act as a nonobjective adversary at the plaintiff's expense." Second Amended Complaint, ¶66. The Sackriders do not inform the Court why they believe the two engineering firms have performed duplicate work or explain the basis for the slurs on the competency of one of the engineers. They further fail to explicate how their obvious dissatisfaction with the outside consultants renders the use of the consultants unconstitutional as it relates to their property. If every applicant is permitted to attack the constitutionality of statutorily-authorized outside consultant regulations merely because they did not agree with the results of the consultants' work, municipalities could not hire such consultants without fear of exposing themselves to liability.

The plaintiffs have therefore failed to state a claim upon which relief may be granted in Count Six and such Complaint should be dismissed.

IV.  CONCLUSION

WHEREFORE, the defendants respectfully request that this Court enter an order allowing their partial motion to dismiss all claims that the defendants or the Boxford Subdivision Rules and Regulations violate the plaintiffs' rights under the U.S. Constitution.

DEFENDANTS,

By their attorneys,

*/s/ signature*

Joel B. Bard (BBO# 029140)
George X. Pucci (BBO# 555346)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

214865/Boxf/0057

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 3/26/04